IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-02471-PAB-CBS

MACALMON MUSIC, LLC,
        Plaintiff,
v.

MAURICE SKLAR MINISTRIES, INC.,
MAURICE SKLAR, and
DEVORAH J. SKLAR
        Defendants.

_____

AMENDED RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE[1]
_____

Magistrate Judge Craig B. Shaffer

        This civil action comes before the court on: (1) Plaintiff MacAlmon Music, LLC's ("MM")

Motion for Summary Judgment, and (2) MM's Request for Entry of Default against Maurice Sklar

Ministries, Inc.  Pursuant to the Order Referring Case dated September 20, 2013 (Doc. # 8) and

the memoranda dated October 31, 2014 and January 13, 2015 (Doc. # 41), these matters were

referred to the Magistrate Judge.  The court has reviewed the Motions, the pleadings, the

declarations and exhibits, the entire case file, the hearings held on December 4, 2013,

December 27, 2013, June 11, 2014, June 16, 2014, and December 4, 2014 (see Courtroom

Minutes (Docs. # 23, # 25, # 30, # 31, # 39)), and the applicable law and is sufficiently advised

in the premises.


I.      Motion for Summary Judgment against Maurice Sklar and Devorah J. Sklar

A.      Standard of Review

        Summary judgment is warranted under Federal Rule of Civil Procedure

_____

[1]      Amended to correct the typographical error, noted in bold type, at page 23.

> 56(c) when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.  A disputed fact is material if under the relevant substantive law it is essential to proper disposition of the claim.  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment.  An issue is genuine if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.

*Fuchs v. Sanders*, 659 F. Supp. 2d 1136, 1141-42 (D. Colo. 2009) (internal quotation marks and citations omitted).

As of this date, Defendants have not filed any response to the pending Motions.  Rule 56(e) specifically contemplates the consequences of failing to oppose a summary judgment motion:

> When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must – by affidavits or as otherwise provided by this rule -- set out specific facts showing a genuine issue for trial.  If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.

*See also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160-61 (1970) (the burden on the nonmovant to respond arises only if the summary judgment motion is properly "supported" as required by Rule 56(c)), *superseded on other grounds by Celotex Corp v. Catrett*, 477 U.S. 317 (1986).  "Accordingly, summary judgment is 'appropriate' under Rule 56(e) only when the moving party has met its initial burden of production under Rule 56(c)." *Murray v. City of Tahlequah, Oklahoma*, 312 F.3d 1196, 1200 (10th Cir. 2002).  "If the nonmoving party fails to respond, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its initial burden of demonstrating that no material issues of fact remain for trial and the moving party is entitled to judgment as a matter of law." *Id.  See also Armstrong v. Swanson*, 2009 WL 1938793 at * 7 (D. Colo. July 2, 2009) ("When a party

with the burden of proof fails to respond to a motion for summary judgment, the motion is not reflexively granted; rather, the Court simply deems the non-movant to have waived the opportunity to assert any additional facts and examines whether the facts asserted by the movant warrant a trial or permit entry of judgment as a matter of law.") (citation omitted); *Barton v. City and County of Denver*, 432 F. Supp. 2d 1178, 1188 (D. Colo. 2006) (although plaintiff's failure to make a substantive response constituted a confession of facts asserted by defendants, it remained incumbent upon the court to make the specific determinations required under Rule 56(c)).

B.    Undisputed Facts

MM initiated this civil action on September 11, 2013, alleging copyright infringement under Title 17 U.S.C. § 101 *et seq.* and unfair competition and deceptive trade practices under the Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. §§ 6-1-105(1)(a), 105(1)(b), and 105(1)(c) against all three Defendants.  (*See* Complaint (Doc. # 1)).

Terry MacAlmon is a ministry pianist and composer. He has composed more than two dozen musical works, including "Draw Me Unto You" and "We Worship You."  (*See* Declaration of Terry A. MacAlmon (Doc. # 36-1) at ¶¶ 2-4).  He has recorded and released more than a dozen CDs, including "Instrumental Worship I."  (*See id.*).  On April 14, 2009, Mr. MacAlmon assigned all rights in the musical works he composed and recorded between 1976 and 2008 to MM.  (See Doc. # 36-1 at ¶ 5,  Exhibit I to Motion (Doc. # 36-11)).  MM owns U.S. Copyright registration PA681-165, registration date July 25, 1994, first publication date June 11, 1993, for the words and music of the musical work "Draw Me Unto You," U.S. Copyright registration PA 1-845-425, registration date May 29, 2013, first publication date June 11, 1993, for the music and

lyrics of the musical work "We Worship You," and U.S. Copyright registration SR 712-200, registration date December 20, 2012, first publication date March 1, 1999, for the sound recording and production of the musical work "Instrumental Worship I" (the "MacAlmon Works."). (See Exhibits H, J, K to Motion (Docs. # 36-10, # 36-12, # 36-13)).   MM separately licenses the "Draw Me Unto You" performance rights through the American Society of Composers, Authors, and Publishers ("ASCAP"), the mechanical rights through the Harry Fox Agency, internet audio downloads through Music Services, and sheet music through Song Select.  (See Doc. # 36-1 at ¶ 9,  Exhibit M to Motion (Doc. # 36-15)).

Defendant Maurice Sklar ("Sklar") is a violinist and recording artist who performs throughout the United States, Canada, Europe, the former Soviet Union, Asia, and Israel.  (*See* Civil Scheduling Order (Doc. # 26) at 5-7 of 14),  Sklar Biography, Exhibit A to Motion (Doc. # 36-3)).  Sklar has licensed two of his performances through ASCAP.  (*See* Exhibit B to Motion (Doc. # 36-4)).  Three of Sklar's works have been registered with the copyright office.  (*See* Exhibit C to Motion (Doc. # 36-5)).  Sklar claims copyrights in four of his own musical recordings.  (See Exhibit S to Motion (Doc. # 36-21)).

Sklar and his wife, Devorah Sklar, own and manage Maurice Sklar Ministries, Inc. ("MSM").  (*See* Responses to Interrogatories No. 1, 3, Exhibit D to Motion (Doc. # 36-6)).  Sklar and Mrs. Sklar have known Mr. MacAlmon since the 1990s.  (See Response to Request for Admission No. 13 (Doc. # 36-6);  Doc. # 36-1 at ¶ 19).  Sklar and Mrs. Sklar are the only officers or directors of MSM and are responsible for the control, management, operation and maintenance of its affairs.  (*See* Responses to Interrogatories No. 1, 3, 4, 5 (Doc. # 36-6); MSM's Resp. to Interrogatory No. 2, Exhibit E to Motion (Doc. # 36-7)).  They "oversee the

production of recordings sold through the website mauricesklar.com."[2]   (*See* Response to Interrogatory No. 1 (Doc. # 36-6)).  MSM is listed as the registrant of MauriceSklarMinistries. com and MauriceSklar.com.  Mrs. Sklar is listed as the registrant's contact person as well as the administrative and technical contact for both domain names.  (See Exhibit F to Motion (Doc. # 36-8)).

Defendants offer for sale at least twenty recordings of Sklar's works and performances. (*See* product catalog, Exhibit G to Motion (Doc. # 36-9))  In 2009, Defendants released the "Sing Hallelujah" CD.  (See Exhibit N to Motion (Doc. # 36-16)).  Defendants created the "Sing Hallelujah" CD by overdubbing Sklar's violin performance with Mr. MacAlmon's piano performance, creating the impression that Sklar and MacAlmon jointly created the CD.  (See Doc. # 36-1 at ¶ 11-14).  "Sing Hallelujah," initially intended to be a demonstration of Sklar's abilities on the violin, "turned out quite well and Maurice Sklar Ministries, happy with the result, decided to use it in their ministry work."  (*See* Amended Response to Interrogatory No. 4, Exhibit O to Motion (Doc. # 36-17)).  Other than an unnamed "studio engineer located in Maryland or Virginia," Sklar and Mrs. Sklar are the only people who participated in preparing the "Sing Hallelujah" CD for publication and distribution.  (*See id.*).  Mrs. Sklar is the only person with knowledge of the costs, revenue, and profits from the sale of Defendants' "Sing Hallelujah" CD. (See Response to Interrogatory No. 4 (Doc. # 36-6)).  Defendants admit distributing Maurice Sklar's "Sing Hallelujah" CD to the public.  (See Answer (Doc. # 17) at ¶ 15,  Response to Request for Admission No. 7 (Doc. # 36-6)).

The "Sing Hallelujah" CD includes the same eight tracks in the same order as "Instrumental Worship I" and each track on "Sing Hallelujah" is the exact same length as the corresponding track on the "Instrumental Worship I" CD.  (See Doc. # 36-1 at ¶ 12,  Exhibit L to

---

[2]   MauriceSklar.com and MauriceSklarMinistries.com appear to be the same website.

Motion (Doc. # 36-14),  Doc. # 36-16).  The two CDs are so similar that when the infringing "Sing Hallelujah" CD is loaded into iTunes, iTunes identifies the CD as "Instrumental Worship I." (See Doc. # 36-1 at ¶ 14).  The names of each track listed in the "Sing Hallelujah" liner notes are substantially the same as the names of the tracks listed in the "Instrumental Worship I" liner notes.  (See Doc. # 36-1 at ¶ 13, Doc. # 36-14, Doc. # 36-16).  Nowhere does "Sing Hallelujah" note that Mr. MacAlmon performed all the piano pieces or attribute any of the compositions to Mr. MacAlmon or MM.  (See Doc. # 36-1 at ¶ 15, Doc. # 36-14, Doc. # 36-16).  Neither MM nor Mr. MacAlmon authorized Sklar, Mrs. Sklar, or MSM to prepare derivatives of the MacAlmon Works.  (See Doc. # 36-1 at ¶¶ 6-8).

In August 2012, shortly after discovering the infringing CD, MM sent Defendants a letter notifying them that their "Sing Hallelujah" CD infringed the MacAlmon Works.  (See Doc. # 36-1 at ¶ 16;  Sklar's Response to Interrogatory No. 10 (Doc. # 36-6), Amended Responses to Requests for Admission 10-15 (Doc. # 36-18)).  On September 11, 2012, Mrs. Sklar, as Executive Director of MSM, acknowledged receipt of the letter and stated "[w]e have tried to reach you many many times over the past years but didn't get any response from you in the past."  (See Exhibit Q to Motion (Doc. # 36-19),  Response to Interrogatory No. 3(a) (Doc. # 36-7)).  Defendants did not voluntarily remove the infringing CD from its website, MauriceSklar. com.  (*See* Declaration of Jacob A. May (Doc. # 36-2) at ¶ 8).  Sometime between January 23, 2013 and February 6, 2013, Defendants modified the product listing for the infringing "Sing Hallelujah" by lowering the price from $18.95 to $15.95.  (See Doc. # 36-2 at ¶ 7,  Doc. # 36-20). Despite the notice of infringement, Defendants continued selling the infringing CD on their website until February 13, 2013, when MM sent a DMCA take-down notice to the Defendants' web host and the host promptly disabled the site.  (See Declaration of Jacob A. May (Doc. # 36-

2) at ¶¶ 8-12).

Defendants admit they did not remove the infringing CD from their website until sometime "between January 23, 2013 and May 11, 2013." (See Response to Interrogatory No. 3(c) (Doc. # 36-7), Exhibit R to Motion (Doc. # 36-20), Doc. # 36-2 at ¶¶ 7,9). While multiple copyright notices and warnings appear on the infringing CD, the case, and the liner notes, Sklar and Mrs. Sklar admit they took no action to "obtain intellectual property rights in the 'Sing Hallelujah' CD, including copyright licenses, mechanical licenses, derivative work licenses, [or] performance licenses." (See Exhibit N to Motion (Doc. # 36-16), Response to Interrogatory No. 11(a) (Doc. # 36-6), Doc. # 36-14). Defendants admit they "infringed the MacAlmon Works." (See Amended Response to Request for Admission No. 11, Exhibit P to Motion (Doc. # 36-18)). Between 2009, when the infringing "Sing Hallelujah" CD was released, until Defendants ceased sales in 2013, Defendants sold all 2,000 units of the "Sing Hallelujah" CD that they had produced. (See Response to Request for Production No. 5 (Doc. # 36-7)). Defendants admit at least $27,000 in gross revenue earned from distributing "Sing Hallelujah." (*See id.*).

C.      Analysis

1.      Copyright Infringement Claim

The plaintiff bears the burden of proof on both elements of a copyright infringement claim: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *La Resolana Architects, PA v. Reno, Inc.*, 555 F.3d 1171 (10th Cir. 2009) (internal quotation marks and citation omitted). "This examination involves two distinct inquires: first, whether defendants, as a factual matter, copied plaintiff's work, and second, whether, as a mixed issue of fact and law, those elements that were copied were protected." *McRae v. Smith*,

968 F. Supp. 559 (D. Colo. 1997) (internal quotation marks and citation omitted).  There is no dispute as to the validity of MM's copyrights.[3]  Nor do Defendants dispute infringing the MacAlmon Works.

   2.   Contributory Infringement Claim

"One infringes contributorily by intentionally inducing or encouraging direct infringement." *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) (citation omitted).  "To state a claim of contributory copyright infringement, a plaintiff must allege that the defendant with knowledge of the infringing activity induced, caused, or materially contributed to the infringing conduct of another." *Viesti Associates, Inc. v. Pearson Education, Inc.*, No. 12-cv-02240-PAB-DW, 2013 WL 4052024, at * 7 (D. Colo. Aug. 12, 2012) (internal quotation marks and citations omitted).  "An allegation that a defendant merely provided the means to accomplish an infringing activity is insufficient to allege a claim for contributory infringement." *Id.* "Rather, liability exists if the defendant engages in personal conduct that encourages or assists the infringement." *Id.*

The evidence shows that Sklar and Mrs. Sklar personally authorized, caused and materially contributed to the copyright infringement described above and knew of the infringement.  They created and distributed "Sing Hallelujah." There is no evidence that anyone else prepared the "Sing Hallelujah" CD for publication and distribution.  Based on the undisputed facts, Sklar and Mrs. Sklar are contributorily liable for the infringing "Sing Hallelujah" CD.

---

[3]     As to the musical work "Draw Me Unto You," MM's certificate of registration from the U.S. Copyright Office constitutes prima facie evidence of a valid copyright and of the facts stated in the certificate. *Palladium Music, Inc. v. EatSleepMusic, Inc.*, 398 F.3d 1193, 1196 (10th Cir. 2005) (citing 17 U.S.C. §410(c)).

3.    CCPA Claim

The CCPA outlaws deceptive trade practices in connection with the offering or sale of goods or services.  Colo.Rev.Stat. § 6–1–105.  A claim under the CCPA consists of the following elements: "(1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury."  *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146–47 (Colo.2003).

The undisputed facts demonstrate each of the five elements.  Defendants created the "Sing Hallelujah" CD by directly copying "Instrumental Worship I" and overdubbing Sklar's violin performance.  Defendants deceived the public into believing that Sklar composed and performed the music on "Sing Hallelujah."  Defendants falsely published, promoted and sold the "Sing Hallelujah" CD as their own work.  Defendants committed this deception in the course of their business of creating and selling musical recordings.  Defendants' deceptive trade practice impacted the public as the customers of Defendants' business.  Finally, Defendants' deceptive trade practices injured MM's legally protected exclusive copyright interests in the MacAlmon Works in the form of lost revenue of $27,000.

In sum, MM owns valid copyright registrations for two music compositions and the "Instrumental Worship I" CD.  Defendants MSM, Sklar, and Mrs. Sklar infringed MM's copyrights by creating and selling their "Sing Hallelujah" CD.  Defendants admit infringement of the MacAlmon Works and revenues of $27,000 from sales of the infringing CD.  Based on the undisputed facts, MM is entitled to summary judgment on its claims for copyright infringement,

contributory copyright infringement, and violation of the CCPA.

4.      Damages

The Copyright Act provides for actual or statutory damages.  17 U.S.C. § 504.  A "copyright owner is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b).  "In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b). Section 504(c) allows for statutory damages "in a sum of not less than $750 or more than $30,000 as the court considers just."

a.      Statutory Damages for Infringement of "Draw Me Unto You" Work

MM seeks statutory damages for Defendants' infringement of the "Draw Me Unto You" work.  The award of statutory damages is determined by the number of protected works that are infringed not the number of actual infringements of those works that have occurred.  *The Clever Factory, Inc. v. Kingsbridge International, Inc.*, No. 3:11-1187, 2014 WL 2711986, at * 1 (M.D. Tenn. June 16, 2014) (citations omitted).  "A plaintiff is entitled to only one award of statutory damages for any work infringed."  *Arista Records LLC v. Lime Grp. LLC, No. 06 Civ. 5936(KMW)*, 2011 WL 1311771, at *1 (S.D.N.Y. Apr. 4, 2011) (internal quotation marks and citation omitted).

"[F]or purposes of statutory damages, courts have declared that separate copyrights are

not distinct works unless they can live their own copyright life." *Capitol Records, Inc. v. MP3 Tunes, LLC*, 28 F. Supp. 3d 190, (S.D. N.Y 2014) (internal quotation marks and citations omitted). *See also Rocking Chair Enterprises, L.L.C. v. Macerich SCG Ltd. P'ship*, 407 F. Supp. 2d 1263, 1268-69 (W.D. Okla. 2005) (where an action involves a compilation such as a CD, individual compositions embodied in the compilation are separate and distinct works if "they can live their own copyright life") (citations omitted);  Nimmer § 14.04[E][1] at 14-93 ("[T]o qualify for a separate minimum award, the work that is the subject of a separate copyright would have to be in itself musically, dramatically, or otherwise viable, even if not presented in conjunction with the other work in which it is incorporated.") (footnotes omitted).  The question is "whether each expression has an independent economic value and is, in itself, viable." *MCA Television Ltd. v. Feltner*, 89 F.3d 766, 769 (11th Cir.1996).

"Draw Me Unto You" is a distinct work, first published on June 11, 1993 and registered on July 25, 1994.  MM licenses the performance rights through ASCAP, the mechanical rights through the Harry Fox Agency, internet audio downloads through Music Services, and the sheet music through Song Select.  "Draw Me Unto You" was published as part of a compilation by MM on "Instrumental Worship I" in 1999.  Defendants' infringement did not commence until 2009, when the infringing CD "Sing Hallelujah" was published, fifteen years after "Draw Me Unto You" was initially registered, and ten years after it was included on "Instrumental Worship I."  The undisputed evidence shows that "Draw Me Unto You" is a separate work with its own economic life and that it was timely registered.  MM is entitled to statutory damages for the unauthorized copying of "Draw Me Unto You."

b.      Statutory Damages for Willful Infringement

If a copyright owner proves a willful infringement, the court may increase the statutory

damages to $150,000.  17 U.S.C. § 504(c)(2).  "District courts have wide discretion in setting

damages within the statutory range set forth in § 504(c)(1)."  *Disney Enters., Inc. v. Farmer*, 427

F.Supp.2d 807, 816 (E.D.Tenn.2006).  Willfulness is a question of fact.  *UMG Recordings, Inc.*

*v. Disco Azteca Distributors, Inc.,* 446 F. Supp. 2d 1164, 1174 (E.D. Cal. 2006) (citation

omitted).  Nevertheless, as with any fact question, if the evidence is such that no reasonable

jury properly instructed could fail to find willfulness, summary judgment is appropriate.  *See*

*N.A.S.*, 968 F.2d at 253 (reversing district court which had found infringement not willful);  *UMG,*

446 F. Supp. 2d at 1174 ("[W]here the relevant facts are admitted or otherwise undisputed,

willfulness can be appropriately resolved on summary judgment.") (citation omitted).

"[A]n infringement is willful if the defendant had knowledge that its actions constitute an

infringement," *N.A.S. Import, Corp. v. Chenson Enterprises, Inc.*, 968 F.2d 250, 252 (2d Cir.

1992) (citation omitted), or that the infringer acted in reckless disregard of the copyright owner's

rights.  *Schmidt v. Holy Cross Cemetery, Inc.*, 840 F. Supp. 829, 834-35 (D. Kan. 1993) (citation

omitted).  "[K]nowledge may be actual or constructive."  *N.A.S.*, 968 F.2d at 252  "In other

words, it need not be proven directly but may be inferred from the defendant's conduct."  *Id.*

Defendants are experienced and knowledgeable music producers who have produced

and continue to sell at least twenty recordings, including CDs and DVDs.  They travel around

the world performing and distributing their music.  Sklar has registered copyrights for at least

three of his own sound recordings; the earliest dating back to 1994.  Defendants did not attempt

to obtain intellectual property rights in the "Sing Hallelujah" CD, including copyright licenses,

mechanical licenses, derivative work licenses, or performance licenses.  Defendants have

admitted infringing the MacAlmon Works.  They placed fraudulent copyright notices on their infringing CD.  The evidence and admissions demonstrate that Defendants knew that copying and overdubbing another artist's entire copyright protected CD constitutes copyright infringement.  *See Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 113 (2d Cir. 2001)(affirming finding of willfulness based on infringer's 20 years of industry experience).

After receiving notice of the infringement, Defendants asserted that they had "tried to reach" MM "many times over the past years . . . ."  Without obtaining permission to create and distribute the infringing "Sing Hallelujah" CD, Defendants proceeded to release the infringing CD, further demonstrating willful infringement.  Despite the August 2012 notice of infringement, Defendants by their own admission continued to sell the infringing CD for at least five more months.  Defendants lowered the price of the admittedly infringing CD from $18.95 to $15.95 and stopped selling the CD only after they exhausted their inventory.  Defendants' conduct demonstrates a "reckless disregard of the copyright owner's rights" that is a basis for finding willfulness.  *Schmidt*, 840 F. Supp. at 834-35.  Defendants have not presented any evidence that they were innocent infringers.  *See D.C. Comics, Inc. v. Mini Gift Shop*, 912 F.2d 29, 35 (2nd Cir. 1990) ("The burden is on the defendants to establish that any infringement was innocent.").  Based on the undisputed evidence and admissions, no reasonable jury could fail to find willfulness.

The undisputed facts and admissions demonstrate that MM owns valid copyrights in the MacAlmon Works and that Defendants intentionally infringed those works when they created and distributed "Sing Hallelujah."  For Defendants' willful infringement of the separate work "Draw Me Unto You," MM is entitled to statutory damages in the amount of $30,000, the minimum amount appropriate under 17 U.S.C. § 504(c)(2);

c.       Actual Damages for Infringement of "Instrumental Worship I" Work

MM seeks and is entitled to Defendants' profits for infringement of "Instrumental Worship

I." Defendants admit to gross revenue of at least $27,000 from the sale of the infringing "Sing

Hallelujah" CD. These revenues rightly belong to MM. 17 U.S.C. § 504(b). Defendants have

produced no documents or accounting records substantiating any expenses or profits unrelated

to the creation or distribution of "Sing Hallelujah." Based on Defendants' infringement of

"Instrumental Worship I," MM is entitled to actual damages in the amount of Defendants'

revenues of $27,000.


d.       Damages for Contributory Copyright Infringement and CCPA Claims

MM is not entitled to duplicative damages under multiple legal theories for the same

intellectual property injury. *Lyons Partnership, L.P v. D & L Amusement & Entertainment, Inc.*,

702 F. Supp 2d 104, 118 (E.D. N.Y. 2010) (citing *Tu v. TAD System Technology, Inc.*, 2009 WL

2905780 *3–4 (E.D.N.Y. Sept. 10, 2009) (holding plaintiffs could not recover under both the

Copyright and Lanham Acts)). *See also Computer Assocs. Intern., Inc. v. Altai, Inc.*, 982 F.2d

693, 720 (2d Cir.1992) (party "may not obtain a double recovery where the damages for

copyright infringement and trade secret misappropriation are coextensive"). "A plaintiff seeking

compensation for the same injury under different legal theories is of course entitled to only one

recovery." *Id.* (quoting *Indu Craft, Inc. v. Bank of Baroda*, 47 F.3d 490, 497 (2d Cir.1995)).

"[A]lthough [the defendants] may have committed [multiple] wrongs under the separate statutory

schemes . . . those wrongs . . . produced one harm-[plaintiff's] economic loss." *Tu*, 2009 WL

2905780 at *4 (citations omitted). The same acts of copying are the basis for all of MM's claims.

The damages sought by MM for copyright infringement, contributory copyright infringement, and

14

unfair competition and deceptive trade practices under the CCPA are coextensive.  MM is entitled to statutory damages in the amount of $30,000 for infringement of the "Draw Me Unto You" work and actual damages in the amount of $27,000 for infringement of the "Instrumental Worship I" work, regardless of the additional legal theories under which it brought its claims.

e.      Attorney Fees and Costs

The Copyright Act provides for the imposition of costs and attorney fees in favor of the prevailing party.  17 U.S.C. § 505.  "[T]o recover statutory damages or attorneys' fees under the Copyright Act, the copyright owner must have registered the work prior to commencement of the infringement." *B2B CFO Partners, LLC v. Kaufman*, 787 F.Supp.2d 1002, 1010 (D. Ariz. 2011) (quoting 17 U.S.C. § 412).  "Draw Me Unto You" was timely registered fifteen years before Defendants infringed the work.  "[A]ttorney's fees are awarded more often as the rule than the exception." *Big Tree Enterprises, Ltd. v. Mabrey*, No. 93-4024-SAC, 1994 WL 191996, at *8 (D. Kan. April 15, 1994).  *See also Girlsongs v. 609 Industries, Inc.*, 625 F. Supp. 2d 1127, 1132 (D. Colo.2008) ("Plaintiffs in copyright actions may be awarded attorneys' fees simply by virtue of prevailing in the action: no other precondition need be met, although the fee awarded must be reasonable.") (citations omitted).

The undisputed evidence and admissions demonstrate copyright infringement by Defendants.  As in *Milene Music, Inc. v. Gotauco*,

> The defendants have deliberately and knowingly infringed upon plaintiffs' copyrights; and subsequent to such infringement, have forced the plaintiffs to engage lawyers and to resort to the courts to enforce the proprietary interests in the copyrights. The defendants, in the court's view, have come forward with no justification for their actions, nor any colorable grounds upon which defense or mitigation could be predicted. The Court believes that this litigation fairly cries out for an award of attorneys' fees.

551 F.Supp. 1288, 1298 (D.R.I.1982).[4]  MM is entitled to recover its reasonable attorney fees and costs in this matter pursuant to 17 U.S.C. § 505.


     f.     Pre- and Post-Judgment Interest

Prejudgment interest is ordinarily awarded, absent some justification for withholding it. *Kleier Adver., Inc. v. Premier Pontiac, Inc.*, 921 F.2d 1036, 1040-41 (10th Cir. 1990) ("we pronounce the rule that prejudgment interest is available to plaintiffs under the Copyright Act"). Title 28 U.S.C. § 1961 specifies that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court."  MM is entitled to prejudgment interest and postjudgment interest on the monetary award.


     g.     Injunctive Relief

The Copyright Act provides for injunctive relief.  *See* 17 U.S.C. § 502(a) (court "may ... grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright");  *Capitol Records, Inc. v. Zahn*, No. 3:06-0212, 2007 WL 542816, at *4 (M.D.Tenn. Feb.16, 2007) ("Injunctive relief is a traditional remedy for copyright infringement.").  "A court may issue an injunction on a motion for default judgment provided that the moving party shows that (1) it is entitled to injunctive relief under the applicable statute and (2) it meets the prerequisites for the issuance of an injunction." *Dunkin' Donuts Inc. v. Peter Romanofsky, Inc.*, No. CV–05–3200, 2006 WL 2433127, at *6 (E.D.N.Y. Aug. 8, 2006) (internal quotation marks and citation omitted).  A plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief.  *See eBay, Inc. v. MercExchange, LLC*, 547

---

[4]     *Abrogated on other grounds as noted in Hamlin v. Trans-Dapt of California, Inc.*, 584 F. Supp. 2d. 1050, 1055-56 (M.D.Tenn 2008).

U.S. 388, 392-93 (2006) (explaining that the Supreme Court has "consistently rejected invitations to replace traditional equitable considerations with a rule that an injunction automatically follows a determination that a copyright has been infringed.")  "In determining whether a permanent injunction is appropriate in a copyright infringement action, courts consider the traditional four factors of (1) likelihood of success on the merits; (2) harm to the Plaintiffs; (3) harm to the Defendant and others; and (4) the public interest."  *Capitol Records,* 2007 WL 542816, at *4.

With regard to the first factor, "the default against defendant satisfies the element of success on the merits."  *Capitol Records,* 2007 WL 542816, at *4 (internal quotation marks and citation omitted).  With regard to the second factor, "copyright infringement is presumed to give rise to irreparable injury."  *Id.  See also Lyons Partnership, L.P v. D & L Amusement & Entertainment, Inc.*, 702 F. Supp 2d 104, 118-19 (E.D. N.Y. 2010) (where plaintiffs have established a prima facie case of infringement, irreparable harm is presumed).  "[W]here there is potential for future harm from infringement, there is no adequate remedy at law."  *Microsoft Corp. v. McGee*, 490 F. Supp. 2d 874, 882 (S.D. Ohio 2007).  Because Defendants continued their infringing activities after notice from MM, there is potential for future harm from infringement.  Defendants' use of a website to carry out their infringing activities also creates potential widespread harm.  MM has shown irreparable injury.

With regard to the third factor, Defendants are not harmed by an injunction requiring them to comply with the law. *Capitol Records*, 2007 WL 542816 at *4.  In contrast, MM is harmed by loss of sales to an infringing product.  Finally, an injunction is in the public's interest. "Since Congress has elected to grant certain exclusive rights to the owner of a copyright in a protected work, it is virtually axiomatic that the public interest can only be served by upholding copyright

protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work." *Metropolitan Regional Information Systems*, 888 F.Supp.2d 691, 713 (D. Md. 2012) (internal quotation marks and citations omitted).  Under the facts of this case, the court deems it appropriate to grant injunctive relief.


II.     Default Judgment as a Sanction against Defendant MSM

        This civil action came before the court on June 16, 2014 for a hearing on counsel's motion to withdraw from representation of Defendants.  (*See* "Motion to Permit Counsel for Defendants to Withdraw as Counsel of Record" (Doc. # 27), Courtroom Minutes/Minute Order (Doc. # 31)).  The court granted counsel's Motion.  (*See* Doc. # 31).  Noting that Defendant MSM may not appear *pro se*, the court required that new counsel enter an appearance on behalf of MSM within 30 days, on or before July 16, 2014.  (*See* Doc. # 31, *see also* D.C. COLO. LAttyR 5(b) ("Where the client of the withdrawing attorney is a corporation, partnership, or other legal entity, . . . such entity may not appear without counsel admitted to the bar of this court , . . .")).  The court advised the parties that if counsel did not timely enter an appearance on behalf of MSM, the court would issue an order to show cause why default judgment should not be entered against Defendant MSM.  (See Doc. # 30).

        Based on Defendant MSM's failure to comply with the court's order requiring counsel to enter an appearance on or before July 16, 2014, the court issued an Order directing Defendant MSM to "show cause in writing on or before Thursday, August 28, 2014 why a default judgment or other sanctions should not be imposed against it for failure to comply with court orders and the Local Rules of Practice for the United States District Court for the District of Colorado." (*See*

"Order to Show Cause" (Doc. # 33); *see also* D.C. COLO. LCivR 41.1 ("[a] judicial officer may

issue an order to show cause why a case should not be dismissed for lack of prosecution or for

failure to comply with these rules, the Federal Rules of Civil Procedure, or any court order")).  As

of this date, Defendant MSM has not responded to the court's Order to Show Cause and

counsel has not entered an appearance on behalf of Defendant MSM.

The court held a Status Conference on December 4, 2014.  (*See* Courtroom

Minutes/Minute Order (Doc. # 39)).  Plaintiff appeared via telephone and its counsel appeared in

person.  (*See id.*).  None of the Defendants appeared in person or via telephone.  (*See id.*).

The court set the Status Conference by a Minute Order dated November 17, 2014.  (*See* Doc. #

38).  Defendants' copies of the Minute Order were not returned to the court in the mail as

undeliverable.  Plaintiff's counsel represented to the court that he does not know Defendants'

current address.  (*See id.*).  None of the Defendants contacted the court to explain their failure

to appear at the Status Conference.

District courts may make schedules and set time limits, Fed. R. Civ. P. 16(b), and

sanction attorneys and parties who disregard such orders, Fed. R. Civ. P. 16(f).  Rule 16(f)

specifically provides that if a party does not appear at a scheduling or pretrial conference, the

judge may enter sanctions pursuant to Fed. R. Civ. P. 37(b)(2)(C), which authorizes entry of a

default judgment.  *See* Fed. R. Civ. P. 16(f) (expressly incorporating Fed. R. Civ. P.

37(b)(2)(C)).  *See also, e.g., Hal Commodities Cycles Management Co. v. Kirsch*, 825 F.2d

1136, 1139 (7th Cir.1987) (default judgment entered against defendant for failure to respect

court deadlines, participate in preparation of pretrial conference order, and appear at a status

conference;  *Goforth v. Owens*, 766 F.2d 1533, 1535 (11th Cir.1985) (dismissal appropriate

pursuant to Fed. R. Civ. P. 16(f) for failure to submit pretrial statement).  The court may also

award reasonable expenses, including attorney fees.  Fed. R. Civ. P. 16(f)(2).  The Local Rules of Practice for the United States District Court for the District of Colorado further authorize sanctions, including default judgment, for appearance of a corporation, partnership or other legal entity without counsel.  D.C. COLO. LAttyR 5(b).  *See also Flynn v. Thibodeaux Masonry, Inc.*, 311 F.Supp.2d 30, 37–38 (D.D.C.2004) (granting motion for default judgment pursuant to Fed. R. Civ. P. 16(f) and Fed. R. Civ. P. 37(b)(2)(C) for failure to retain counsel) (citations omitted).

Federal courts also have the inherent authority to enter default judgment against a defendant in order to "manage their business so as to achieve the orderly and expeditious disposition of cases."  *LaFleur v. Teen Help*, 342 F.3d 1145,1149 (10th Cir. 2003).  *See also Butera v. District of Columbia*, 235 F.3d 637, 661 (D.C. Cir. 2001) (holding that a district court may order sanctions, including a default judgment, pursuant to the court's inherent power to "protect [its] integrity and prevent abuses of the judicial process").  "[T]he inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 49 (1991).

The court must "ensure that default judgment is a 'just' sanction for the offending party's misconduct."  *EBI Securities Corp., Inc. v. Net Command Tech, Inc.*, No. 01-1524, 85 F. App'x 105, 108 (10th Cir. Dec. 22, 2003) (citation omitted).  "[I]n addition to considering the culpability of the offending party, the district court also typically should consider a number of other factors on the record, including (1) the degree of actual prejudice to the non-offending party; (2) the amount of interference with the judicial process caused by the offending party; (3) whether the court warned the offending party in advance that default judgment would be a likely sanction for noncompliance; and (4) the efficacy of lesser sanctions."  *Id.*  "These factors do not constitute a rigid test; rather, they represent criteria for the district court to consider" in selecting a sanction.

*Id. See also S.E.C. v. First Houston Capital Resources Fund,* Inc., 979 F.2d 380, 382 (5th Cir.

1992) (default judgment sanction permitted "in the face of a clear record of delay or

contumacious conduct") (internal quotation marks and citation omitted).  As Defendant MSM has

failed to comply with the court's orders, the Local Rules of Practice for the United States District

Court for the District of Colorado, and the Federal Rules of Civil Procedure, the court proceeds

to consider the factors for determining whether judgment by default is a just sanction.

The record demonstrates that MSM is culpable for its conduct in this civil action.  MSM

has not communicated that its non-compliance with the orders and rules of this court was

inadvertent or the result of inability to comply.  A willful failure is "any intentional failure as

distinguished from involuntary noncompliance. No wrongful intent need be shown." *M.E.N. Co.*

*v. Control Fluidics, Inc.*, 834 F.2d 869, 872 (10th Cir. 1987) (internal quotation marks and

citation omitted).  More than once Defendant MSM has disregarded the court's orders, the

court's Local Rules, and the Federal Rules, leading the court to conclude that its conduct is

willful and in bad faith.  MSM was advised of its obligations and it did not request any extension,

demonstrate any need for an extension, or offer any acceptable explanation for its non-

compliance.  MSM's conduct has prejudiced MM by causing it to appear at several hearings and

to expend time and money.  MSM's conduct has also interfered with the judicial process.  The

court has spent judicial resources on setting, resetting, and monitoring this civil action, and

issuing an Order to Show Cause.  "[I]f a party 'could ignore court orders . . . without suffering the

consequences, then the district court cannot administer orderly justice, . . .' " *EBI Securities*

*Corp*, 219 F.R.D. 642, 648 (D. Colo. 2004) (citing *Ehrenhaus v. Reynolds*, 965 F.2d 916, 921

(10th Cir. 1992)).

MSM has not participated in the proceedings in this case in any meaningful way since the

filing of its counsel's motion to withdraw.  (*See* Doc. # 15).  "[D]efendants cannot escape liability

merely by refusing to participate."  *Pleitez v. Carney*, 594 F.Supp.2d 47, 48–49 (D.D.C.2009).

Default judgment is an appropriate method for resolving litigation and protecting a diligent

plaintiff "when the adversary process has been halted because of an essentially unresponsive

party."  *Teamsters Local 639-Employers Health Trust v. Boiler and Furnace Cleaners, Inc.*, 571

F. Supp. 2d 101, 106 (D.D.C 2008).  *Cf. Mutual Funds Investment Litigation*, 590 F.Supp.2d

741, 758 (D.Md.2008) (holding that the ultimate sanction of default judgment was warranted

where defendants' failure to respond to communications from plaintiffs' counsel and oppose

plaintiffs' motion for default constituted a "a pattern of indifference and disrespect to the

authority of the court").

MSM was fully warned of the possible sanctions for non-compliance with court orders

and rules.  (*See* Docs. # 30, # 31).  Further, "[t]he Federal Rules of Civil Procedure, as well as

local rules of court, give ample notice to litigants of how to properly conduct themselves."  *Hal

Commodities Cycles Management Co.*, 825 F.2d at 1139.  There is no lesser sanction that is

appropriate under the circumstances.  The  court's orders have not produced compliance by

MSM.  It would be pointless to impose any lesser sanction on MSM, which has already

demonstrated willful bad faith in repeatedly disregarding the court's rules and orders and failing

to participate in the case.  Judgment by default against MSM is an appropriate sanction

pursuant to the Federal Rules of Civil Procedure, the Local Rules of Practice for the United

States District Court for the District of Colorado, and the court's inherent powers to achieve the

orderly and expeditious disposition of its docket.

Having determined that default judgment is appropriate, the court must determine the

damages to be awarded.  The court may compute damages from the facts of record.  *Taylor v.*

*City of Ballwin, Mo.*, 859 F.2d 1330, 1333 (8th Cir.1988) (evidentiary hearing not necessary where facts in the record enable the court to fix the amount which the plaintiff is lawfully entitled to recover);  *Adkins v. Teseo*, 180 F.Supp.2d 15, 17 (D.D.C.2001) (although court must make independent determination of the sum to be awarded, court need not hold a hearing, but may rely on detailed affidavits or documentary evidence).  The court finds the damages are supported by competent evidence in the record, as set forth above in part C. 4 of this Recommendation.

Accordingly, IT IS RECOMMENDED that:

1.      Plaintiff MacAlmon Music, LLC's Motion for Summary Judgment (Doc. # 36) (filed August 15, 2014) be GRANTED and summary judgment be entered in favor of Plaintiff and against Defendants Maurice Sklar and Devorah J. Sklar.

2.      Judgment by default be entered against Defendant Maurice Sklar Ministries, Inc. as a sanction pursuant to Fed. R. Civ. P. 16 and 37 and the court's inherent powers to achieve the orderly and expeditious disposition of its docket, based on Defendant's failure to comply with the court's orders, **the Local Rules of Practice for the United States District Court for the District of Colorado, and the Federal Rules of Civil Procedure, failure to appear at the December 4, 2014 Status Conference, and failure to respond to the court's Order to Show Cause.**

3.      Plaintiff recover from Defendants, jointly and severally: (a) actual damages in the amount of $27,000 based on Defendants' willful infringement of "Instrumental Worship I" and violations of C.R.S. § 6-1-105(a); (b) statutory damages in the amount of $30,000 based on Defendants' willful infringement of "Draw Me Unto You;" (c) prejudgment and postjudgment

interest on the total damages award; (d) and reasonable attorney fees and costs, upon submission by MM of an affidavit and documentation of attorney fees and a bill of costs.

4.     An injunction be entered barring Defendants, their employees, agents, and all persons acting under their direction, control, or with their permission, from unlawfully copying, using, displaying, distributing, or offering for sale unauthorized derivative versions of the MacAlmon Works without license or permission or otherwise infringing the copyrights in the MacAlmon Works.

FURTHER IT IS ORDERED that MacAlmon's Request for Entry of Default against Maurice Sklar Ministries, Inc. is DENIED.

**Advisement to the Parties**

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).

The district judge shall make a *de novo* determination of those specific portions of the proposed findings or recommendations to which specific objection is made.  28 U.S.C. § 636(b)(1).  A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  *See In re Griego*, 64 F.3d at 583; *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  The district judge may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  28 U.S.C. § 636(b)(1).

"[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *One Parcel of Real Property*, 73 F.3d at 1060.  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (district court's decision to review a magistrate's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate's order, cross-claimant had waived its right to appeal those portions of the ruling);  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 4th day of February, 2015.

BY THE COURT:


___s/Craig B. Shaffer_____
United States Magistrate Judge